Troy ARMSTRONG, Plaintiff,

v.

CITY OF DALLAS, Defendant.

Civ. A. No. 3-91-CV-2458-H.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 18, 1992.

Kenneth W. Byford, Byford and Associates, Dallas, TX, for plaintiff.

Detra G. Hill, Dallas City Attys. Office, Dallas, TX, defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Defendant's Motion for Summary Judgment, filed November 3, 1992; Plaintiff's Response, filed November 12, 1992; and Defendant's Reply, filed November 24, 1992.

### I. Background

In 1987, the Dallas Fire Department ("DFD") instituted a Physical Fitness Weight Program to "establish standard operational procedures of the Dallas Fire Department regarding body weight control." *See* Defendant's Brief at 1. Troy Armstrong, a 6′ 3″, 400 pound African–American man, claims that the City used this program to harass, reprimand, and retaliate against him in a racially discriminatory manner after he complained about racial incidents at the DFD. The City explains its actions by stat-

ing that Armstrong failed to achieve periodic weight loss goals, thus compromising his ability to perform his firefighting duties.

Believing that he was the victim of unlawful retaliation, Armstrong filed this action, alleging that the City retaliated against him for the fact that he filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") beginning in 1988. Armstrong asserts two claims: (1) discriminatory retaliation in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a), and the Texas Fair Employment Practices Act; and (2) breach of contract for the City's alleged failure to abide by the terms of a settlement agreement which disposed of Plaintiff's 1988 EEOC complaint.

In its motion for summary judgment, the City argues that Plaintiff has failed to adduce any evidence which shows a causal connection between the City's actions and Plaintiff's charges with the EEOC. Armstrong responds by stating that sufficient evidence exists to present a genuine issue of fact regarding all elements of Plaintiff's claims.

## II.  Summary Judgment

"Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the nonmovant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Once the moving party shows that it is entitled to summary judgment, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot*, 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). However, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990).

## III.  Analysis

### A.  Questions of Fact

According to the City, the undisputed material facts relevant to this motion are as follows:

1) Pursuant to Chapter XIII, Section 2(1) of the Dallas City Charter, the chief of the fire department has exclusive control over the fire force, under such rules and regulations as may be established by the city man-

ager or according to the ordinances of the City. *See* Exhibit 1.

2) Pursuant to Chapter XIII, Section 2(4) of the Dallas City Charter, the chief of the fire department is empowered to make rules for the regulation and discipline of the fire department and its employees. *See id.*

3) Armstrong, an African–American, began working for the DFD in June of 1970. *See* Exhibit 2 at 12.

4) During his tenure with the DFD, Plaintiff rose from an entry level fire and rescue officer position to the rank of second driver. At the time leading up to the events involved in this lawsuit, Armstrong was assigned to the C shift at Station 49. *See id.* at 16.

5) The DFD adopted a physical fitness weight program in January of 1987. *See* Exhibit 3 at 3–9.

6) On January 11, 1988, Plaintiff was issued a memorandum from his immediate supervisor informing him that he was listed in the "very poor" category under the DFD weight program because he was 78.2% over his ideal weight. At the time, Plaintiff was 6′ 3″ tall and weighed 360 pounds. Plaintiff's ideal weight under the program was 176–202 pounds. The letter informed Plaintiff that he needed to lose sufficient weight to bring himself within the "good" classification by January 1, 1989. *See id.* at 10.

7) In May of 1988, Plaintiff was transferred to the A shift at Station 49. *See* Exhibit 2 at 16.

8) On May 20, 1988, the DFD sent Plaintiff a letter of counseling because his weight was in violation of the physical fitness weight program. *See* Exhibit 3 at 11.

9) On July 22, 1988, Plaintiff was placed on temporary non-firefighting status pending an evaluation of his physical condition and the determination of an acceptable weight loss schedule.

10) On July 29, 1988, Plaintiff filed a discrimination claim with the EEOC in which he alleged racial discrimination and harassment. In this complaint, Armstrong stated that he was transferred and assigned unfair duties, and that he was told that he could not perform his job because of his weight. *See* Exhibit 7.

11) On August 8, 1988, Plaintiff received a letter which stated that the July 22, 1988 reassignment and evaluation was requested "due to your excessive weight, 426 pounds, and the concern of personnel in your chain of command for your physical well being." *See id.* at 12–13. The letter stated that Armstrong could be reassigned to his firefighting post if he reached a short term target weight of 395 pounds. The letter also established a long range goal for Plaintiff to weigh in at 288 pounds, and indicated that this weight loss "should be accomplished at an average rate of 2–3 pounds per week." Finally, the letter directed Armstrong to report his weight biweekly.

12) On November 16, 1988, Plaintiff entered into an agreement with the DFD to lose 3–5 pounds a month. According to this agreement, if a 3 to 5 pound weight loss was not met for two consecutive months, Plaintiff would be reassigned to a non-firefighting assignment. *See* Exhibit 3 at 14.

13) On November 22, 1988, weighing 381 pounds, Plaintiff was reassigned to a firefighting assignment. *See* Exhibit 3 at 15.

14) On January 13 and 20, 1989, the parties executed a settlement agreement regarding Plaintiff's 1988 EEOC complaint. In the settlement, the City agreed that it would not penalize Plaintiff in any manner "because of having filed a previous charge with the [EEOC]." *See* Exhibit 4.

15) On August 7, 1989, Plaintiff signed another agreement with the DFD, pledging to lose weight. *See* Exhibit 3 at 16–17. This agreement also detailed some of Plaintiff's weight history in the period of time since the November 16, 1988 weight loss agreement. The letter indicated that after meeting his weight loss goals in January and February of 1989, Armstrong reported a weight gain on March 1, 1989. After receiving a new starting weight in March, Armstrong met his weight reduction goal in April and May of 1989, but then failed to lose weight in June and July, weighing in at 407.5 pounds on July 21, 1989 (representing a weight gain of 11.5 pounds since March).

The August 7, 1989 agreement established that Plaintiff would weigh 381 pounds by August 16, 1989, and maintain an average weight loss of 3 pounds per month until he reached his goal of 288 pounds. Moreover, Plaintiff agreed that if he failed to meet his goal, he would automatically be reassigned to a non-firefighting assignment, and could be subject to disciplinary action that could result in suspension, demotion, or dismissal.

16) On September 30, 1989, Plaintiff was given a letter of counseling for losing his firefighting coat. The City states that this letter was issued pursuant to the Dallas Fire Department Manual of Procedures, Volume 2, Rules and Regulations, Section 5–2.34. See id. at 18.

17) On October 9, 1989, Plaintiff received letter of reprimand for violating his August 7, 1989 weight loss agreement and the Dallas Fire Department Manual of Procedures, Volume 2, Rules and Regulations, Section 5–2.27. This letter indicated that Plaintiff weighed 394 pounds at the time, a 13 pound increase in his weight since August 15, 1989. See id. at 19.

18) On October 16, 1989, Plaintiff was transferred to a non-firefighting position. See Exhibit 5.

19) On October 19, 1989, the DFD reported to the Dallas Civil Service Department that Plaintiff had an unsatisfactory performance. See Exhibit 3 at 20.

20) On October 24, 1989 Plaintiff filed another claim with the EEOC, alleging retaliation for previously filing a discrimination charge with the EEOC. See Exhibit 5.

21) Plaintiff worked his last shift for the DFD in January of 1990. See Exhibit 2 at 151.

22) Plaintiff applied for and received an on-duty disability retirement pension on July 31, 1991. See Exhibit 6.

However, Plaintiff argues that other facts prevent the conclusion that Defendant is entitled to judgment as a matter of law. Armstrong states that at all times during his employment with the DFD, he passed all of his physical examinations, received excellent performance reviews, and provided excellent service. He also asserts that he received a letter of counseling for noncompliance with the DFD weight program in early 1988 at the same time that he became a spokesman for black firefighters working on the Station 49 C·shift and complained about certain alleged racial incidents at work. Armstrong argues that the City repeatedly used the issue of his weight against him in an attempt to punish him for having lodged an internal complaint for racial discrimination and for having filed a complaint with the EEOC.

More specifically, Plaintiff forwards the following facts in opposition to the City's motion for summary judgment:

1) At no time did Armstrong's weight interfere with his ability to perform his duties. See Armstrong Deposition at 169.

2) The physical fitness weight program itself contains no provisions regarding disciplinary action.[1]

3) Plaintiff complied with the weight program in 1987.

4) Plaintiff states that he was counseled about his weight and later transferred in retaliation for the fact that he had brought certain racial incidents at the Station 49 C shift to the attention of the City. See id. at 24–26; 43.

5) Plaintiff states that shortly after the racial incidents referred to above, he received the May 20, 1988 letter of counseling. See Defendant's Exhibit 3 at 11. Plaintiff contends that this letter is erroneous because, although the letter counsels him for failing to lose the required amount of weight during 1987, the letter admits that Plaintiff had in fact lost 30 pounds in 1987. Plaintiff explains that the letter is erroneous because the DFD weight program calls for weight loss at the rate of 2–3 pound per month. Having lost 30 pounds in 1987, Plaintiff con-

---

1. However, the Court notes that the DFD Manual of Procedures requires firefighters to stay "within the acceptable weight limits proportional to their height as set by Department regulations," see Exhibit 3 at 35, and that the Manual of Procedures also authorizes various levels of punishment for breaches of its rules. See id. at 48.

cludes that he lost weight at the required rate.

6) The August 8, 1988 letter to Armstrong indicates that on July 26, 1988, Plaintiff was evaluated by a City physician, Dr. Kelly, who found Plaintiff to be in good physical condition, but indicated that he needed to lose weight. *See* Armstrong Deposition at 66–68; Exhibit 3 at 12.

7) In July of 1988, Plaintiff was reassigned to a non-firefighting position despite the fact that he had passed a physical agility test. *See* Armstrong Deposition at 61–2.

8) Plaintiff argues that he continued to be harassed about his weight despite Dr. Kelly's determination that Plaintiff could perform his duties at a weight of 395 pounds.

9) Plaintiff contends that the City compelled him to enter several weight loss arrangements which required him to lose weight at rates well above those established by the Physical Fitness Weight Program. Specifically, Plaintiff complains that the August 8, 1988 weight reduction plan required him to lose weight at a rate of 2–3 pounds per week and to report his weight biweekly. Plaintiff observes that the Physical Fitness Weight Program indicated that overweight personnel should lose 2–3 pounds per month. *See id.* at 125; Defendant's Exhibit 3.

10) Plaintiff also states that no other firefighter was singled out for a special weight loss program of this nature, or held to standards higher than those set out in the DFD's standard policy. *See* Armstrong Deposition at 142–143.

11) Plaintiff notes that in November 16, 1988, he was presented with yet another weight loss program which required Plaintiff to lose weight at a rate of 3–5 pounds per month, again in excess of that required by the Weight Program. *See* Exhibit 3 at 14.

12) On March 1, 1989, after Plaintiff's EEOC claim was settled, Plaintiff asserts that the DFD retaliated against him and breached the settlement agreement by cutting Armstrong's efficiency rating because he was overweight. *See* Exhibit C. Plaintiff contends that he had complied with the November 1988 weight loss program at this time. Furthermore, Plaintiff notes that in a conversation regarding Plaintiff's lowered efficiency grade, the subject of another EEOC complaint arose. Plaintiff stated that Chief Willeford informed him that he would not prevail on an EEOC complaint. *See* Armstrong Deposition at 114.

13) Plaintiff asserts that the DFD further breached the Settlement Agreement by continuing to require Plaintiff to lose weight pursuant to the August 7, 1989 weight loss agreement which specified a weight loss rate above that set by the Physical Fitness Weight Program. *See* Defendant's Exhibit 3 at 16–17.

14) On September 30, 1989, Defendant issued Plaintiff a letter of counseling for Plaintiff's loss of his firefighting coat. However, Plaintiff states that he had fully complied with the DFD's policies and procedures, and that the loss was not due to any fault of his own. *See* Armstrong Deposition at 147–149.

15) Plaintiff alleges that he was singled out for the October 9, 1989 reprimand regarding his weight and, he states, was the only firefighter who was required to enter into a weight loss agreement and to be subject to disciplinary action if he failed to lose weight consistently. *See id.* at 142–43; 143–46.

16) Finally, Plaintiff observes that at the time of his October 16, 1989 transfer to a non-firefighting position, Plaintiff weighed 394 pounds, less than the 395 pound limit for firefighting duty previously set by Dr. Kelly in 1988. *See* Defendant's Exhibit 5.

### B. Issues of Law

Defendant argues that two issue of law control the outcome of this case: 1) whether Plaintiff has established any causal connection between actions taken by the DFD regarding Plaintiff's weight and the EEOC charges; and 2) whether Defendant breached the settlement agreement entered into between Plaintiff and Defendant.

### 1. The Discrimination Claim

To establish a Title VII violation, Armstrong must ultimately demonstrate a causal connection between his race and any discrim-

inatory retaliation. *See generally United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). However, as many courts have noted, proving employment discrimination or retaliation is often a difficult matter. Thus, "[t]o ease the evidentiary burden on employment discrimination plaintiffs, courts have fashioned special rules of proof in order 'progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" *Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633 (5th Cir. 1985) (Goldberg, J.) (citation omitted).

Initially, a plaintiff may make out a rebuttable presumption of discrimination by establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). In retaliation cases, the Fifth Circuit has stated that to make out a *prima facie* case, Armstrong must establish 1) that he was engaged in an activity protected by Title VII; 2) that an adverse employment action occurred; and 3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *See De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 856 (5th Cir.1982); *Carter v. South Central Bell,* 912 F.2d 832, 842–43 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

Once an employee establishes a *prima facie* case, the burden of production shifts to the employer. In order to rebut the presumption of discrimination, the employer must articulate some nondiscriminatory reason why the plaintiff was adversely treated; otherwise the factfinder is required to find for the plaintiff. Once the employer forwards a neutral explanation for its action, the plaintiff must come forward with evidence that the explanation is pretextual. Pretext can be shown either by presenting direct evidence of retaliation, or by showing that the City's proffered explanation is unworthy of credence. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

To prevail in this summary judgment motion on the grounds that Plaintiff failed to establish a *prima facie* case, Defendant must prove that no genuine issue of fact exists with respect to a material element of Plaintiff's *prima facie* case, and that it is entitled to judgment as a matter of law. Armstrong, however, must merely demonstrate that issues of material fact exist with respect to the elements of the *prima facie* case. This analysis is the same when Plaintiff states that the City's neutral explanation is pretextual: the City must show that no genuine issue of fact exists with respect to Armstrong's charge that the city's neutral explanation forwarded to justify its actions is pretextual. Plaintiff must only show a fact issue regarding pretext. *See Thornbrough,* 760 F.2d at 646; *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506–07 (5th Cir.1988); *Florence v. Frank,* 774 F.Supp. 1054, 1059 (N.D.Tex. 1991).

■ Analyzing Plaintiff's *prima facie* case, it is plain that Armstrong engaged in protected activity when he filed a charge of discrimination with the EEOC in 1988. Plaintiff has also sufficiently alleged adverse employment actions. These include 1) receiving a letter of reprimand for his failure to lose weight; 2) receiving a transfer to a non-firefighting job; 3) having his efficiency grade in the areas of performance in an emergency and job knowledge cut; 4) being reported to the Civil Service Department for having an unsatisfactory performance; 5) being informed that he could be terminated for failing to lose weight as agreed; and 6) receiving a letter of counseling for his loss of his firefighter's coat. Finally, the Court assumes that, for the purposes of his *prima facie* case, Plaintiff sufficiently alleged a causal connection between the EEOC complaint and the adverse employment actions because of the proximity in time of some of the alleged retaliatory actions and the date of the EEOC complaint. *See Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991); *Mitchell v. Baldrige,* 759 F.2d 80 (D.C.Cir.1985); *see also McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir. 1983).

■ The City's non-retaliatory explanation for its actions is that it was properly applying the requirements of the Physical Fitness Weight Program to Plaintiff. The City

states that its physical fitness weight program was instituted to ensure quality firefighting services and public safety. According to the City, any firefighter who failed to meet the minimum standard of fitness within a specified time period would be issued a letter of counseling. *See* Defendant's Brief at 10. The DFD notes that its Rules and Regulations also require physical fitness, and justify punishment of those who do not comply with those rules. *See* Exhibit 3 at 21–53, DFD Manual of Procedure Vol. 2, 5–2.27.

Given this non-retaliatory explanation of the City's actions, the burden shifts back to Plaintiff to come forward with direct evidence showing that this explanation is pretextual, or to demonstrate that the City's explanation is unworthy of credence. *See Bienkowski*, 851 F.2d at 1507. The Court concludes that Plaintiff cannot meet this burden.

Plaintiff has produced no direct evidence of retaliation or racial animus in the City's decision to counsel, reprimand, or transfer Plaintiff. In an attempt to do so, Plaintiff conclusorily asserted that the City "really wanted [Armstrong] gone." *See* Armstrong Deposition at 130. However, Plaintiff has forwarded no direct evidence to support this assertion, other than his own speculation. Such conjecture is insufficient to overcome a properly supported motion of summary judgment. *See Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

Moreover, Plaintiff has not shown that the City's proffered explanation is unworthy of credence. Instead, it appears that the City acted consistently throughout the period in question: the actions taken by the DFD were related to Plaintiff's weight and his failure to comply with the physical fitness program.

First, Plaintiff complains about the May 20, 1988 letter of counseling. Although Plaintiff correctly notes that he had lost weight in 1987, Armstrong was overweight at the time he received the letter. Moreover, the DFD observes that Plaintiff was not the only firefighter to receive a letter of counseling for being over the weight guidelines. At

least six other firefighters received letters of counseling for violations of the physical fitness program. *See* Exhibit 3 at 54–62.

Plaintiff also complains about his transferred to a non-firefighting job on July 22, 1988. In his complaint to the EEOC soon thereafter, Armstrong alleged that his transfer was discriminatory because no other employee had been treated similarly. However, the DFD states that no other firefighters' weight classification was as "very poor", the worst possible rating. Thus, the City states that he was transferred because "Plaintiff's weight was much more of an immediate threat to the public, other firefighters, as well as himself." *See* Defendant's Brief at 11. Plaintiff has produced no evidence to show that this explanation is unworthy of credence. Indeed, Armstrong was the only person to fall within the "very poor" category; hence, he cannot show that other, similarly situated firefighters were treated differently.

The City then notes that Plaintiff was reassigned to Station 49 on November 22, 1988, after he entered into the November 11, 1988 agreement with the DFD to lose weight. More generally, the DFD argues that several weight loss agreements were executed between the parties in order to allow Plaintiff to lose weight without suffering disciplinary action. *See* Exhibit 2 at 122–23. Defendants contends that after all of these agreements failed to achieve the desired results, the DFD sent Plaintiff a letter of reprimand for violating the weight loss agreement, transferred Plaintiff to a non-firefighting position, and took other adverse actions about which Plaintiff complains.

Plaintiff also complains that he received a letter of counseling for losing his coat. Plaintiff does not deny losing the coat; instead, he argues that since the coat was returned, he should not have been disciplined. However, Plaintiff has shown no causal connection between Plaintiff's discipline for losing his coat and the filing of his EEOC complaint. Indeed, DFD regulations make all DFD personnel responsible and accountable for department equipment. Moreover, DFD records indicate that other fire-

fighters were similarly disciplined for loss of equipment. *See* Exhibit 3 at 64–67. This fact precludes any inference of retaliatory treatment based upon the letter of counseling about the lost firefighter's coat. Both parties agree that Title VII does not insulate an employee from disciplinary action simply because he has filed an EEOC claim. *See Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir.1977); *Smith v. Texas Department of Water Resources*, 818 F.2d 363 (5th Cir.1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1012, 98 L.Ed.2d 977 (1988).

Essentially, Plaintiff complains that the City's actions were unreasonable because the weight loss required of him exceeded the DFD's physical fitness weight program policy. However, the reasonableness of the weight policy is not at issue here. Indeed, in the Age Discrimination in Employment Act context, the Fifth Circuit has stated that civil rights laws do not protect Plaintiffs from "erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski*, 851 F.2d at 1508. Challenges to the reasonableness of an employer's neutral justification of its actions do not create a fact issue regarding pretext. *Id.* Although Plaintiff claims that he was singled out for special treatment, he has not produced any evidence that others were treated differently. Other firefighters received letters for losing equipment, and others received letters for being overweight. Finally, as noted above, Armstrong was the only person to fall within the "very poor" category; hence, he cannot show that other, similarly situated firefighters were treated differently.

The Court has concluded that Plaintiff has not adduced any direct evidence of retaliation. Moreover, Plaintiff has failed to forward evidence which shows that the City's neutral explanation of its actions is unworthy of credence. It follows that Plaintiff has failed to show that there is a material fact which precludes summary judgment on Plaintiff's Title VII claim.

Furthermore, Plaintiff can show no violation of the Texas Fair Employment Act, Tex. Rev.Civ.Stat.Ann. Article 5221k, § 5.01(1) (Vernon Supp.1992), on this set of facts because Plaintiff has provided no indication that the state statute is broader in scope than the parallel federal statute.

### 2. The Contract Claim

In Plaintiff's second claim for relief, Armstrong states that the City breached the settlement agreement the parties executed by continuing to request that Plaintiff lose weight and by cutting Plaintiff's efficiency grade. However, the agreement entered into by the parties only prohibited the City from retaliating against Armstrong for filing the EEOC claim. Given the Court's conclusion that the City did not retaliate against Plaintiff, the City did not breach the agreement.

### IV. Conclusion

Defendant's Motion for Summary Judgment is **GRANTED.**

**SO ORDERED.**

### *FINAL JUDGMENT*

This Judgment is entered pursuant to the Court's Memorandum Opinion and Order filed December 18, 1992.

It is **ORDERED, ADJUDGED and DECREED** by the Court that Plaintiff take nothing by his suit against Defendant City of Dallas, and that this suit be, and it is hereby, **DISMISSED** with prejudice at Plaintiff's cost.