TEXAS STATE TROOPERS
ASSOCIATION, INC., et
al., Plaintiffs,

v.

Dan MORALES, as Attorney General
of the State of Texas, Defendant.

Civil Action No. 3:97–CV–2114–H.

United States District Court,
N.D. Texas,
Dallas Division.

March 17, 1998.

Gina K. Culpepper, James D. Jordan, Munsch, Hardt, Kopf, Harr & Dinan, Dallas, TX, Carl Parker, Parker & Parks, Port Arthur, TX, Errol Copilevitz, Wm. E. Raney, Copiletz & Canter, Kansas City, MO, for Plaintiffs.

Kaye Schultz, Attorney General of Texas, Litigation Division, Austin, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Plaintiffs' Motion for Summary judgment, filed January 7, 1998, and Defendant's Motion for Summary Judgment, filed January 21, 1998, and pleadings related thereto.

The Texas State Troopers Association, *et al.* ("Plaintiffs") seek a declaration that Sections 12 and 13 of Senate Bill 1581, the Texas Law Enforcement Telephone Solicitation Act ("Act"), are unconstitutional. *See* 1997 Tex. Sess. Law Serv., 75th Leg., ch. 1202 (S.B. 1581) (Vernon). Sections 12 and 13 restrict telephone solicitation by nongovernment charities organized for the benefit of law enforcement agencies ("private law enforcement charities") by limiting the hours during which such fundraisers may call potential donors and by mandating that certain disclosures be made in conjunction with the solicitations.

Plaintiffs contend that Sections 12 and 13 violate the First and Fourteenth Amendments by singling out private law enforcement charities and imposing upon them burdensome restrictions that will impede their ability to solicit funds for causes that are of benefit to the citizens of Texas. The Court is personally aware that telephone solicitations are often annoying and that there may be solicitors who attempt to deceive potential donors. However, the statutory clauses before the Court are not narrowly and carefully tailored to address the goals of the State.

Therefore, for the reasons stated below, the Court finds that Section 12 of the Act violates Plaintiffs' First Amendment right of free speech. Moreover, from the evidence before the Court, the Court is unable to find that private law enforcement charities are any more susceptible to fraud or misrepresentation than other types of solicitation. Consequently, the Court concludes that Sections 12 and 13 violate the Equal Protection Clause of the Fourteenth Amendment in that they are directed only towards private law enforcement charities, leaving fundraisers for government law enforcement charities and commercial operations unburdened by such disclosure requirements and curfew provisions (i.e., restrictions on the hours during which fundraisers are allowed to telephonically solicit potential donors).

### 1. BACKGROUND

The Act, which became effective on September 1, 1997, regulates telephone solicitation and is specifically addressed to private law enforcement charities. On August 27, 1997, Plaintiffs moved for injunctive relief, but on September 3, 1997, Defendant Dan Morales ("State") agreed not to enforce Sections 12 and 13 of the Act pending submission of cross-motions for summary judgment and judicial resolution of the constitutional challenge by Plaintiffs to Sections 12 and 13 of the Act, which read as follows:

SECTION 12. NOTICE TO CONTRIBUTORS; PROHIBITION. (a) If less than 90 percent of the contributions or funds collected by a charitable organization or commercial telephone solicitor are paid by the charitable organization or commercial telephone solicitor to a charitable organization, the commercial telephone solicitor shall notify each person solicited by telephone, before accepting a contribution of funds from the person, of the percentage of the contributions or funds that will be paid to the organization for which the contributions or funds are being solicited and the percentage that will be retained by the solicitor. This information shall also be included on any written statement mailed to the contributor.

(b) A charitable organization or commercial telephone solicitor may not make a telephone call to solicit contributions or funds unless the call is made after 9 a.m. and before 7 p.m., Monday through Friday.

SECTION 13. PROHIBITED PRACTICES. (a) A person may not commit an unfair or deceptive act or practice in the conduct of solicitations for a charitable organization.

(b) A person may not represent to a person solicited that a contribution is to be used to benefit the survivors of a law enforcement officer killed in the line of duty unless:

(1) 100 percent of the contributions are used to benefit those survivors; or

(2) the person solicited is informed in writing of the exact percentage of the contribution that will directly benefit those survivors.

The gravamen of Plaintiffs' Complaint is that Sections 12 and 13 of the Act are unduly burdensome because the disclosure requirements therein are contingent upon solicitation costs. Plaintiffs contend that not only is it more economical for private law enforcement charities to employ fundraisers than to solicit money themselves, but also that the costs of telephone solicitation are necessarily more than ten percent of the donations solicited by fundraisers.

Plaintiffs further contend that the Sections 12 and 13 of Act are unconstitutional because they constitute an impermissible, content based restriction that does not withstand strict scrutiny. Plaintiffs additionally allege that Sections 12 and 13 are a prior restraint on protected speech, are overbroad, and discriminate against private law enforcement charities in violation of the Equal Protection Clause of the Fourteenth Amendment. Complaint at Counts 1–4.

## 2. RELEVANT STANDARD

The Federal Rules of Civil Procedure provide that summary judgment shall be rendered when the evidence establishes that there is "no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir.1994); *Armstrong v. City of Dallas*, 829 F.Supp. 875, 876 (N.D.Tex.1992), *aff'd* 997 F.2d 62 (5th Cir.1993). Under proper circumstances, awarding summary judgment is favored in the federal courts:

"Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986) (footnote omitted).

A summary judgment movant must inform the court of its basis for the motion and identify the material specified in Rule 56(c) that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

If the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A party opposing summary judgment must go beyond the pleadings and "set forth specific facts" showing that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ruiz*, 12 F.3d at 513; *Armstrong*, 829 F.Supp. at 876. A party opposing summary judgment may not rest on mere conclusory allegations or denials in the pleadings. Fed.R.Civ.P. 56(e); *see also Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir.1995). Furthermore, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. There must be "significant probative evidence" on which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

In determining whether a genuine issue exists for trial, the Court must view the evidence introduced and all factual inferences

from the evidence in the light most favorable to the nonmovant. *Eastman Kodak v. Image Technical Servs., Inc.,* 504 U.S. 451, 456–58, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990); *see also Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir.1993). If the record, taken as a whole, cannot "lead a rational trier of fact to find for the nonmoving party," no genuine issue remains for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir. 1991).

### 3. THE DISCLOSURE PROVISIONS

#### a) Section 12(a)

##### 1) First Amendment—Strict Scrutiny

Section 12(a) of the Act requires that fundraisers engaging in telephone solicitation for private law enforcement charities, prior to actually soliciting from the potential donors, must disclose the percentage of the donation that will be withheld by the fundraiser if such amount is greater than ten percent of the total donation. Act § 12(a).

 The Supreme Court has consistently held that charitable telephone solicitation is protected under the First Amendment to a greater extent than commercial speech; in addition, regulations of protected speech are subject to strict scrutiny—that is, such speech may be restricted only when the restricting law is narrowly tailored to further a compelling state interest. *See Riley v. National Federation of Blind,* 487 U.S. 781, 799–800, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 967–68, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980).

 In analyzing the constitutionality of Section 12(a), the Supreme Court has recognized that charities enter into contracts with fundraisers on their own initiative and that the First Amendment presumes that speakers, not the government, know best both what they want to say and how to say it. *See*

*Riley,* 487 U.S. at 791, 108 S.Ct. 2667; *see also, Thomas v. Collins,* 323 U.S. 516, 545, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (Jackson, J., concurring) (holding that the very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion).

The State argues that the nature of solicitation by private law enforcement charities renders their requests for donations particularly susceptible to fraud because many such organizations have names nearly identical to government law enforcement groups. Def. Motion at 5. The State also alleges that many solicitations by fundraisers for private law enforcement charities are deceptive because they suggest that contributions will increase police presence or protection in the contributor's neighborhood. *Id.*

 Regardless of the validity of the State's speculative contentions regarding solicitations by private law enforcement charities, the Court acknowledges that the goals of fraud prevention and protection of the public are both compelling and in the interest of the public at large. However, the Supreme Court, in *Sable Communications of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989), held that "[t]he Government may...regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." Thus, to serve the legitimate interest of protecting the public from misleading and fraudulent solicitation by private law enforcement charities, the State, in order to withstand constitutional scrutiny, must do so by a narrowly drawn statute designed and carefully tailored to serve those interests without unnecessarily interfering with First Amendment freedoms. *Id.*

 A law is narrowly tailored when it does not burden substantially more speech than is necessary to further the state's legitimate interests. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Consequently, a regulation of protected speech passes constitutional

muster only when the cost to speech is carefully calculated so that the balance between the burden on protected speech and the State's interest is reasonable. *Hays County Guardian v. Supple,* 969 F.2d 111, 118 (5th Cir.1992), *citing Bd. of Trustees of State University of New York v. Fox,* 492 U.S. 469, 481, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). The State bears the burden of establishing that Section 12(a) is reasonable and even a legitimate reason such as the prevention of fraud cannot justify a restriction if that restriction accomplishes the goal at an inordinate cost to free speech. *Id; see also, Munson,* 467 U.S. at 956, 104 S.Ct. 2839 (holding that "...when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.").

The Supreme Court ruled in *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 967–68, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), that a restriction on the percentage of donations that a private fundraiser may retain is unconstitutional because, in part, it is based on the mistaken premise that high solicitation costs are an accurate measure of fraud. Section 12(a) of the Act restricts solicitation in a similar fashion to the statute that was before the *Munson* Court. Specifically, Section 12(a) links its disclosure requirement to the costs of the solicitation—that is, if the fundraiser is to retain too great a percentage of the funds solicited, Section 12(a) mandates that the solicitor make certain disclosures. Because the Supreme Court has ruled that there is no relationship between solicitation costs and fraud prevention, the Court finds that the disclosure requirement of Section 12(a) is not carefully tailored so as to effectively reduce fraudulent or deceptive solicitation by private law enforcement charities.

Moreover, the Court finds no logical connection between the disclosure requirement of Section 12(a) and the prevention of donors' confusion regarding whether they are being solicited by a government or nongovernment law enforcement charity.[1] Instead, Section 12(a) reaches a substantial amount of constitutionally protected conduct and, if enforced, the restrictive disclosure requirement could cause some less moneyed charities that provide a beneficial public service to cease their solicitation activities in Texas. *See Beckerman v. City of Tupelo, Mississippi,* 664 F.2d 502, 507 (5th Cir.1981), *citing Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) (holding that a law is overbroad if it does not aim specifically at evils within the allowable area of control, but sweeps within its ambit other activities that constitute an exercise of First Amendment rights). Thus, the Court finds that Section 12(a) is not carefully and narrowly tailored to address the State's concerns regarding fraudulent or misleading solicitation by private law enforcement charities.

In *Riley,* the Supreme Court addressed a disclosure requirement in a North Carolina telephone solicitation regulation that was similar to the disclosure provision of Section 12(a). *Riley,* 487 U.S. at 800–01, 108 S.Ct. 2667. In so doing, the Court held unconstitutional a provision requiring that professional fundraisers disclose to potential donors, before an appeal for funds, the percentage of charitable contributions collected during the previous 12 months that were actually turned over to the charity. *Id.* The Court found that requiring speech that a speaker would not otherwise make is a content based regulation which is subject to the test of strict scrutiny. *Id.* at 796, 108 S.Ct. 2667. So, requiring fundraisers to disclose the percentage of accumulated funds retained by the fundraising organization was held to be an unconstitutional burden on their First Amendment right to protected speech. *Id.* at 798, 108 S.Ct. 2667. Further, the *Riley* Court ruled that the adoption of a rule to inform donors how the money that they contribute is spent in order to dispel their alleged misperceptions regarding the allocation of their donations was unduly burdensome and not narrowly tailored. *Id.* Simply put,

---

1. The State produces no evidence demonstrating that the disclosure requirement of Section 12(a) will 1) eradicate the public's confusion as to whether telephone solicitors are raising funds for a government or nongovernment entity or 2) eliminate the misperceptions of donors who are "fraudulently" misled to believe that they will receive a quid pro quo for their donations.

"...compelled disclosure will almost certainly hamper the legitimate efforts of professional fundraisers to raise money for the charities they represent." *Id.* at 799, 108 S.Ct. 2667.

Thus, in *Riley,* the Supreme Court recognized that regulations requiring fundraisers to make unfavorable disclosures are unduly burdensome for small or unpopular charities which do not have the financial wherewithal to undertake their own solicitation campaigns, but instead must rely on hiring private fundraisers. *Riley,* 487 U.S. at 800–01, 108 S.Ct. 2667. Furthermore, there is a strong First Amendment interest in leaving unfettered by disclosure requirements the amount of money that a charity can spend on fundraising activity. *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 967, and n. 16, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). It follows that the Court must hold unconstitutional a mandatory disclosure provision directed towards solicitation where more benign and narrowly tailored options are available. *Id.; see also, NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (holding that broad prophylactic rules in the area of free speech are suspect and that precision of the regulation must be the touchstone in an area so closely touching our most precious freedoms).

As alluded to above, the First Amendment requires that the State not dictate the content of speech absent necessity, and then, only by means precisely tailored. *Riley,* 487 U.S. at 800, 108 S.Ct. 2667. Regardless of whether the State has demonstrated a compelling necessity for a disclosure requirement, the interests of the State sought to be achieved by the Act could be pursued by less restrictive means than those set forth in Section 12(a). The State can require private law enforcement charities to comply with specified registration requirements. For instance, Section 4(a)(9)(D) of the Act mandates that private law enforcement charities file with the attorney general a statement setting forth the amount that the particular charity has paid to commercial telephone solicitors during the preceding 12 months. In addition, the State could publish the private law enforcement charities' detailed financial disclosure forms. Act § 10; *see also, Riley,* 487 U.S. at 800, 108 S.Ct. 2667. Moreover, the State is free to enforce its already existing state fraud laws in order to prohibit professional fundraisers from obtaining money on false pretenses. *Id.*[2] Thus, it is apparent that methods exist by which to achieve the Act's purposes but which do not so greatly impinge upon Plaintiffs' First Amendment rights and yet educate and protect the public regarding the issue at hand.[3]

### 2) Prior Restraint of Protected Speech

 The State may not prospectively silence speech except in extremely limited circumstances. *Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Further, prior restraints of protected speech violate the First Amendment and therefore any system of prior restraint of expression comes to the Court with a heavy presumption against its constitutional validity. *Freedman v. State of Maryland,* 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *see also, Davis v. East Baton Rouge Parish School Bd.,* 78 F.3d 920, 928 (5th Cir.1996).

 The Court concludes that Section 12(a) of the Act constitutes a prior restraint of protected speech. Forcing fundraisers for private law enforcement charities to disclose the percentage of contributions that will be retained by the fundraiser if less than ninety percent of the contributions are to be paid to the charity imposes a substantial burden on Plaintiffs, for it is clear that telephone solicitors have a limited and time sensitive window

---

**2.** Texas law prohibits unfair and deceptive practices in the course of solicitation for charitable organizations and it is illegal to represent to a potential donor that proceeds from charitable solicitations are being employed for purposes other than those for those for which they are solicited. *See* Tex.Rev.Stat. Ann. Art. 9023 (Vernon 1987 & Supp.1997).

**3.** Further, the Supreme Court noted that "[d]onors are also undoubtedly aware that solicitations incur costs, to which part of their donation might apply. And, of course, a donor is free to inquire how much of the contribution will be turned over to the charity." *Riley,* 487 U.S. at 799, 108 S.Ct. 2667.

of opportunity during which to communicate their message. Mandating that the solicitors disclose such information at the beginning of the phone call would certainly inhibit the solicitors' ability to effectively seek contributions and, consequently, would impede the solicitation. Such impediments violate the spirit of the Constitution, for proper application of the First Amendment facilitates a free marketplace of ideas which would be stifled by the disclosure provision of Section 12(a). *See Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). In *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), the Supreme Court held that "...soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease." The Court finds that the disclosure requirement of Section 12(a) would unduly hamper the efforts of private law enforcement charities, including those that are of benefit to the citizens of Texas.

**b) Section 13(b)—First Amendment**

■ Section 13(b) of the Act mandates that fundraisers may not telephonically solicit for the benefit of survivors of law enforcement officers killed in the line of duty unless 1) they are to retain none of the donation or 2) they inform the donor in writing of the exact percentage of the contribution that will directly benefit the survivors. Act § 13(b)(1) and (2). Section 13(b)(1) is unduly restrictive and is essentially impossible to comply with in that all solicitation will involve some costs. As a result, the solicitor is forced to meet the directive of Section 13(b)(2). The State argues that Section 13(b)(2) is constitutional because it does not require the solicitors to make any oral disclosures prior to attempting to solicit funds from a potential donor. Instead, Section 13(b)(2) merely requires that, subsequent to the solicitation and the donor's pledge to contribute funds, the private law enforcement charity must provide to the donor a written disclosure of the percentage of the contribution to be retained by the fundraiser if that percentage is greater than zero.

The Court finds the State's arguments unpersuasive. First, it is likely that, in most cases, requiring a telephone solicitor to send a disclosure letter to a donor after the donation has been made will serve no prophylactic purpose. Second, one must read Section 13(b) in conjunction with Section 12(a). In doing so, it is apparent that, according to Section 12(a), there must be *prior* oral disclosure to the potential donor if less than ninety percent of the contribution is to go to the private law enforcement charity. This disclosure entails the telephone solicitor telling the contributor what percentage of the funds will be paid to the organization for which the funds are being solicited and the percentage that will be retained by the solicitor. Section 13(b) is more specific than Section 12(a) and deals only with solicitation that is to be used to benefit the survivors of a law enforcement officer killed in the line of duty. Thus, it appears that those solicitations covered by Section 13(b) must comply with the Section 12(a) as well—that is, a fundraiser for a private law enforcement charity who is to retain in excess of ten percent of the funds solicited must make the Section 12(a) mandated disclosure even if the person is soliciting specifically for survivors of a law enforcement officer killed in the line of duty. Consequently, the Court does not reach the question of whether or not Section 13(b)(2) alone violates the First Amendment because a charity that must comply with Section 13(b)(2) must also comply with Section 12(a).

**c) Equal Protection under the Fourteenth Amendment**

Plaintiffs assert that Sections 12 and 13 of the Act violate the Equal Protection Clause of the Fourteenth Amendment in that they discriminate against private law enforcement charities in their exercise of their First Amendment right to free speech. As with protected speech in general, the standard to be applied when determining whether a law

violates the Equal Protection Clause is that of strict scrutiny. *See Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (holding that for a state to enforce a content based exclusion, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that legitimate end).

■■■ Sections 12 and 13 of the Act violate the Equal Protection Clause of the Fourteenth Amendment by imposing restrictions that apply only to private law enforcement charities. First, Sections 12 and 13 discriminate among and between nonprofit organizations based solely on the type of charitable services that they offer the residents of Texas. Second, Sections 12 and 13 discriminate against the private law enforcement charities in relation to commercial telephone solicitors. Lastly, Section 13(b) discriminates against nongovernment law enforcement nonprofit organizations that solicit contributions to benefit survivors of law enforcement officers killed in the line of duty by requiring additional disclosure unless one hundred percent of the funds are utilized to benefit such survivors. Essentially, Sections 12 and 13 target only one type of charity and, without sufficient justification, impose upon these organizations unduly restrictive burdens. *See Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 94–95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (invoking the Equal Protection Clause in a case closely intertwined with First Amendment interests).

In *Mosley,* the Supreme Court adjudicated the constitutionality of a Chicago ordinance that prohibited picketing near primary and secondary schools; however, the ordinance exempted from its ambit peaceful picketing of any school involved in a labor dispute. *Mosley,* 408 U.S. at 101, 92 S.Ct. 2286. The Court found that the selective exclusion of peaceful labor picketing violated the Equal Protection Clause of the Fourteenth Amendment and because the restriction was closely intertwined with First Amendment interests, as are the restrictions currently before this Court, the relevant question was whether there was an appropriate State interest that was suitably furthered by the differential treatment. *Id.* at 95, 92 S.Ct. 2286.[4] The Supreme Court held that the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *Id.* The State has presented insufficient evidence to warrant the disparate treatment afforded to private law enforcement charities in Sections 12 and 13 of the Act. Accordingly, the Court finds that Sections 12 and 13 of the Act impose content based restrictions which violate the Equal Protection Clause of the Fourteenth Amendment.

## 4. THE CURFEW PROVISION

■■■ Plaintiffs contend that the curfew provision of the Act violates the Equal Protection Clause of the Fourteenth Amendment. Section 12(b) of the Act states that private law enforcement charities (and their private fundraisers) may not place telephone solicitation calls unless the calls are made after 9 a.m. and before 7 p.m., Monday through Friday.[5] In response to Plaintiffs' contentions that the curfew provision of the Act violates the Equal Protection Clause of the Fourteenth Amendment, the State argues that the curfew is constitutional because a ban on free expression may be imposed in a non-public forum if the prohibition is reasonable and content neutral. *Perry Ed. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Court recognizes that calling potential donors at their private homes requires the invocation of a non-public forum analysis, but

---

4. Sections 12 and 13 of the Act, in similar fashion to the Chicago ordinance in *Mosley,* affect expressive conduct, in part, by classifying restrictions in terms of the subject of the targeted conduct, which in this case is telephone solicitation by *private law enforcement charities.*

5. The Supreme Court ruled that courts should employ a similar analysis when determining the constitutionality of laws preventing solicitation during particular time frames (i.e., curfew provisions) as when adjudicating the constitutionality of laws containing disclosure provisions. *See Riley,* 487 U.S. at 796–97, 108 S.Ct. 2667 (holding that the difference between compelled speech and compelled silence is without constitutional significance); *see also, West Virginian Board of Education v. Barnett,* 319 U.S. 624, 637, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (holding that "...[t]he right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind...").

the Court, on the other hand, finds that the Act's curfew provision is far from content neutral.

■ The curfew provision is content based in that it applies to a specific type of solicitation—that is, it does not affect charities that are not connected with law enforcement and it is more restrictive than the Texas provision applying to commercial telephone solicitation.[6] Therefore, the curfew regulation is also subject to strict scrutiny and must be narrowly tailored to further a substantial State interest. *See Munson,* 467 U.S. at 959–60, 104 S.Ct. 2839; *Schaumburg,* 444 U.S. at 636, 100 S.Ct. 826. The Supreme Court has frequently condemned content based discrimination among different users of the same medium of expression. *See Mosley,* 408 U.S. at 96, 92 S.Ct. 2286.[7] Similarly, the Court declines to uphold the content based differentiation resulting from the curfew provision when the State has not demonstrated a reasonable basis for the distinction between private law enforcement charities on the one hand and other charities or commercial organizations on the other. *See, e.g., Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 513, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (holding that the government is forbidden from favoring commercial speech over constitutionally protected speech); *see also, Fraternal Order of Police Clearwater Lodge # 10 v. Connolly,* No. 94–891–Civ–T–24(E) (M.D.Fla. September 30, 1994) (holding unconstitutional an ordinance which imposed a curfew on nonprofit solicitations but not on commercial solicitations).

There is no evidence before the Court that solicitation for private law enforcement charities is any more disruptive than other types of telephone solicitation; hence, the disparate treatment that enactment of Section 12(b) of the Act would engender is unjustified.

Therefore, the Court finds that Section 12(b) is arbitrary and does not advance the goal of fraud prevention or protection of the public in a manner consistent with the Equal Protection Clause. *See Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), *citing F.S. Royster Guano v. Com. of Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920) (holding that a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike).

### 5. CONCLUSION

The Court concludes that Section 12(a) violates the First Amendment, for the restrictions set forth therein are not carefully and narrowly tailored to accomplish the State's goal of protecting the residents of Texas from fraudulent and deceptive solicitation by fundraisers for private law enforcement charities.[8]

Further, the Court finds that the disclosure provisions of Sections 12(a) and 13(b), as well as the curfew provision of Section 12(b), violate the Equal Protection Clause of the Fourteenth Amendment.

In sum, the Court finds that Sections 12 and 13 of the Act are unconstitutional. Therefore, Plaintiffs' Motion for Summary Judgment is **GRANTED.** Defendant's Motion for Summary Judgment is **DENIED.**

Counsel for Plaintiffs are **DIRECTED** to submit a judgment no later than noon, March 30, 1998.

SO ORDERED.

**6.** Under Texas law, commercial solicitors placing consumer telephone calls for the sale of goods or services may only make those calls between the hours of 9:00 a.m. and 9:00 p.m. on weekdays or Saturdays, and between 12:00 noon and 9:00 on Sundays. Tex. Bus. and Comm.Code Ann. § 37.02 (Vernon 1987 & Supp.1997).

**7.** In *Mosley,* the medium of expression was picketing; in the case at bar, the medium is telephone solicitation.

**8.** Because compliance with Section 13(b)(1) is virtually impossible in the context of private fundraising, private law enforcement charities seeking contributions for survivors of law enforcement officers killed in the line of duty would essentially be forced to comply with Section 13(b)(2). However, those charities subject to Section 13(b)(2) must still comply with Section 12(a) and therefore the Court does not reach the question of whether Section 13(b) alone violates the First Amendment.