Glenn MARTIN, d/b/a The Glenn Martin Agency, Appellant,

v.

LOU POLIQUIN ENTERPRISES, INC., d/b/a Barbizon School of Modeling, Appellee.

No. A14–84–091–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 5, 1985.

Rehearing Denied July 5, 1985.

Joel Bennett of Kendrick, Netter & Bennett, Los Angeles, Cal., and Clarence E. Eriksen of Arnold, White & Durkee, Houston, for appellant.

Eugene J. Pitman and Donald W. Mills of DeLange, Hudspeth, Pitman & Katz, Houston, for appellee.

## OPINION ON MOTION FOR REHEARING

DRAUGHN, Justice.

Following the panel opinion previously rendered in this case, both appellant and appellee filed motions for rehearing before the full court. We withdraw the previous panel opinion and substitute the following.

This case presents three major issues. Of primary concern is (1) the definition of the term "consumer" under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA),[1] a definition that determines who may initiate a private cause of action under the DTPA. Our review of this first issue regarding consumer status calls into question a panel decision of this court rendered four years ago, wherein this court held that one must transfer valuable consideration to be a consumer under the DTPA. *Bancroft v. Southwestern Bell Telephone Co.*, 616 S.W.2d 335 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). Also at issue are (2) whether a party may limit its DTPA liability by contract and (3) whether the evidence is sufficient to support the trial court's award for lost profits.

Lou Poliquin, president of the appellee modeling school, sought to place an advertisement in the 1980 Houston Yellow Pages through the services of The Glenn Martin Agency, a national advertising firm specializing in the placement of such ads. When the ad failed to appear in the Houston directory, Lou Poliquin Enterprises sued Glenn Martin under the DTPA. The trial court awarded Lou Poliquin Enterprises actual damages of $30,000 in lost profits, $5,965 in attorneys' fees, and $2,000 under DTPA § 17.50(b)(1). Glenn Martin presents eleven points of error raising the three issues listed above. We now hold that valuable consideration is not a prerequisite for DTPA consumer status, we overrule our contrary holding in *Bancroft*, and we affirm the trial court's judgment in favor of Lou Poliquin Enterprises.

Lou Poliquin's modeling school in Houston, Texas, operated as a franchise of Bar-

bizon School of Modeling International of New York City. In September of 1979, Barbizon International informed Mr. Poliquin that The Glenn Martin Agency had been granted the right to solicit contracts for ads from all its franchises. Mr. Poliquin subsequently executed such a contract with Martin's agency for renewal of the Barbizon ad in the 1980 Houston Yellow Pages. When the directory appeared, however, the Barbizon ad was not included.

The parties offer different explanations for this omission. Mr. Poliquin contends Barbizon International notified him in December of 1979 that it had terminated its national contract with Glenn Martin; however, the franchisor indicated that individual franchisees could continue their contracts with the agency for the 1980 ads. Mr. Poliquin testified that he elected to continue his contract. However, he became alarmed in January of 1980 when a local sales representative of the Houston Yellow Pages notified him that he had not received a renewal notice for the Barbizon ad. Mr. Poliquin testified that he immediately called The Glenn Martin Agency to determine if there was a problem in placing his ad. An agency sales representative assured Poliquin that his ad would appear and stated that the local Southwestern Bell sales representative would not have been notified of the Barbizon renewal because the agency had placed the ad with a senior Bell employee who handled placements by national agencies. Subsequently, the local Bell representative admitted to Mr. Poliquin that it was possible for the ad to have been placed through a senior Bell employee. In reliance upon The Glenn Martin Agency's assurances, Mr. Poliquin did not place an ad with the local Bell sales representative.

Glenn Martin offers a very different version of the facts. He testified his agency sent Mr. Poliquin a letter in December of 1979 stating that its contract with Barbizon International had been terminated and that Mr. Poliquin should make other arrangements to place the 1980 Barbizon ad. Mr. Poliquin denied having received such a let-

---

1. TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63     (Vernon Supp.1985).

ter. The agency sales representative responsible for Mr. Poliquin's account specifically denied receiving a call from Mr. Poliquin in January inquiring as to the status of the Barbizon ad. The trial court apparently believed Mr. Poliquin's version of the facts.

## CONSUMER STATUS ISSUE

■ Appellant Glenn Martin alleges in his first two points of error that the Barbizon School of Modeling may not recover under the DTPA because there is no evidence or insufficient evidence that the school is a consumer as required by the act. We disagree. It is well settled that an individual must be a consumer to initiate a private cause of action under DTPA § 17.-50(a).[2] A consumer is defined in DTPA § 17.45(4) as one "who seeks or acquires by purchase or lease, any goods or services...." However, the critical question confronting us is whether a person who merely *seeks* to purchase goods or services may be a consumer if he has not actually transferred valuable consideration for the object of his search. The specific answer to this question has to date been clouded with uncertainty. We are now presented squarely with this issue, because in the present case, Mr. Poliquin executed a contract with the advertising agency but had not paid for the services. Relying on earlier case law rationale, Glenn Martin claims the Barbizon School is not a consumer under the DTPA because Mr. Poliquin did not transfer valuable consideration for the services sought.

As primary support for his position, Martin cites *Bancroft v. Southwestern Bell Telephone Co.*, 616 S.W.2d 335 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). The facts in *Bancroft* are remarkably similar to the case at bar, and that opinion states that one must transfer valuable consideration to qualify as a DTPA consumer. *Id.* at 337. However, *Bancroft* was decided in 1981. Recent developments in this area of the law indicate that we should re-evaluate our position to determine whether *Bancroft*'s rationale still applies.

In 1981 the Texas Supreme Court stated that the DTPA must be liberally construed to carry out the legislative intent of consumer protection. *Cameron*, 618 S.W.2d at 540; DTPA § 17.44. In the years following *Cameron*, most of the cases interpreting the DTPA definition of "consumer" arose from situations where a payment changed hands at some point in the transaction, although the purchase or lease may not have been entirely consummated.[3] There are very few cases in which *no* payment occurred at any point, thus placing the issue of the necessity of valuable consideration squarely before an appellate court. *Bancroft*, 616 S.W.2d at 335; *Exxon Corp. v. Dunn*, 581 S.W.2d 500 (Tex. Civ.App.—Dallas 1979, no writ).[4]

The Texas Supreme Court recently indicated that a person's "objective" is of paramount importance in determining DTPA consumer status. *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex.1984).[5] An important

---

2. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983); *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex.1982); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981); *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980).

3. *See, e.g., Flenniken*, 661 S.W.2d at 705; *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260 (Tex.1983); *Joseph v. PPG Industries*, 674 S.W.2d 862 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex.App.—Corpus Christi 1984, no writ); *Dickson Distributing Co. v. LeJune*, 662 S.W.2d 693 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Garcia v. Rutledge*, 649 S.W.2d 307 (Tex.App.—

Amarillo 1982, no writ); *Ridco, Inc. v. Sexton*, 623 S.W.2d 792 (Tex.App.—Fort Worth 1981, no writ).

4. In *Exxon Corp. v. Dunn*, the plaintiff had taken his car to an Exxon car-care center to have the air-conditioner repaired. However, because he did not pay for the allegedly defective repairs, the Dallas Court of Appeals held in 1979 that the plaintiff lacked standing as a consumer under the DTPA. *Exxon Corp.*, 581 S.W.2d at 500.

5. Although *La Sara* arose in the context of a lending institution, the opinion clearly states that its interpretation of consumer status is not

factor in qualifying as a DTPA consumer, then, is whether a person *intended* to purchase or lease the goods or services in question, or more succinctly, whether that person's *objective* was to purchase or lease. The *La Sara* opinion makes no reference to valuable consideration as a requirement for consumer status. Although the necessity of valuable consideration was not squarely before the Supreme Court under the circumstances of that case, we believe *La Sara* illustrates to some degree the current trend of the supreme court's reasoning with respect to this issue.

Our examination of the statute as a whole supports the conclusion that DTPA consumer status is not dependent upon the transfer of valuable consideration. For example, in § 17.46(b)(10), the statute lists the practice of "advertising goods or services with intent not to supply a reasonable expectable public demand ..." as a deceptive trade practice actionable by a consumer. *See* DTPA § 17.50(a)(1). Section 17.-46(b)(10) was designed to prevent "bait and switch" advertising where the seller attracts customers through the advertisement of inexpensive products the seller intends to sell only in nominal amounts. Customers responding to this advertisement are immediately diverted to more expensive products. *See Smith v. Baldwin,* 611 S.W.2d 611, 615 (Tex.1980). When a consumer encounters this practice, must he actually buy the more expensive product or at least tender a downpayment on a product he does not want before he may sue the seller for a deceptive trade practice? We think not. Under these circumstances, valuable consideration would not typically change hands. Therefore, to be eligible to bring a DTPA claim based on § 17.-46(b)(10), the prospective purchaser must at least have approached the seller with the *objective* of purchasing the advertised inexpensive product. He must at least have *sought* in good faith to purchase.

In reviewing the § 17.46(b) laundry list of deceptive practices, we can conceive of numerous situations wherein an individual would execute a purchase contract but would not actually follow through with payment because of the subsequent discovery of a deceptive trade practice. This individual could suffer substantial damages in justifiable reliance upon the contract he had executed in good faith with the seller. We believe the DTPA was designed to protect consumers confronted with precisely this type of problem. If that consumer can prove his damages with reasonable certainty, he may recover pursuant to the DTPA.

We now have three factors before us in deciding whether *Bancroft* should control our decision in the instant case: (1) the legislature and the Supreme Court have specifically acknowledged that the DTPA should be liberally construed to protect the public; (2) a reading of the statute as a whole indicates the legislature contemplated actionable practices wherein a transfer of valuable consideration would not always take place; and (3) the Supreme Court recently stated that a person's "objective" is critical in determining consumer status. In view of these factors, we overrule *Bancroft* and hold that the transfer of valuable consideration is not a prerequisite to consumer status under the DTPA.[6] While it is true that the Supreme Court has never specifically stated that valuable consideration is *not* a requirement for DTPA consumer status, we believe our interpretation to this effect not only comports with the trend exhibited in recent Supreme Court decisions, but also promotes the intent of the statute to protect the public.

If valuable consideration is *not* a prerequisite, what then is required to achieve consumer status? A DTPA consumer is one who in good faith *initiates the purchasing process.* An individual initiates the purchasing process when he (1) presents himself to the seller as a willing

---

restricted *solely to cases involving financial organizations. La Sara,* 673 S.W.2d at 566.

**6.** The Corpus Christi Court of Appeals recently came to the same conclusion in *Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d 612 (Tex. App.—Corpus Christi 1985, no writ) (en banc).

buyer with the subjective *intent* or specific "objective" of purchasing, and (2) possesses at least some credible indicia of the *capacity* to consummate the transaction. If a defendant seller in a DTPA action challenges the plaintiff buyer's status as a consumer, the buyer must be prepared to offer proof of (1) a good-faith intention to purchase and (2) the capacity to purchase the goods or services in question. The seller may attempt to rebut the buyer's claim of consumer status by offering proof that the buyer entered into the transaction without a true intention to purchase *or* without the capacity to consummate the deal. If such a challenge is levied, the trier of fact must, as always, review the evidence and decide whether the buyer is a DTPA consumer, taking into account the legislature's intent that the DTPA be liberally construed to protect the public against deceptive trade practices.

▪ In the case at bar, Mr. Poliquin's "objective" was to purchase services from The Glenn Martin Agency. In fact, the parties specifically acknowledged that objective by executing a written contract for this purpose. Additionally, the modeling school had operated for several years, and the local Southwestern Bell sales representative offered to place another ad for Mr. Poliquin, indicating that Mr. Poliquin had paid for previous ads and likely possessed the capacity to pay for future ones. We overrule Mr. Martin's first and second points of error because we find sufficient evidence that the Barbizon School of Modeling *intended* to purchase, took action to purchase, and possessed the *capacity* to purchase the Yellow Pages ad. The school therefore achieved DTPA consumer status

even though it did not actually pay for the ad.[7]

▪ Glenn Martin warns that our elimination of valuable consideration from DTPA consumer status will precipitate a flood of frivolous DTPA claims. We are not impressed by this argument, because at least three factors militate against this result. First, our two-pronged test for consumer status requiring the *objective* of purchasing and the *capacity* to purchase narrows the field of potential claimants. Second, the DTPA itself requires that a claimant suffer damages, and such damages must be alleged in good faith in the claimant's original petition and subsequently proven by a preponderance of the evidence. Finally, DTPA § 17.50(c) provides a mandatory award of attorney's fees to a defendant if the court finds the suit groundless, brought in bad faith, or brought for the purpose of harrassment. A defendant may review these three factors and employ numerous pretrial and trial procedures to challenge a plaintiff suspected of bringing a frivolous DTPA claim.

## CONTRACTUAL WAIVER ISSUE

▪ In his fifth point of error, Glenn Martin contends the trial court erred in rendering judgment for appellee because the limitation-of-liability clause in the parties' contract was valid and thus waived Glenn Martin's DTPA liability. The contract contained the following language:

> The liability of Glenn Martin Agency in connection with any error or omission in publication of, or failure to publish, any item of advertising in any issue of any directory, shall be limited to the charges for the publication in such issue of the

---

7. Although we interpret DTPA consumer status as not requiring valuable consideration, we note that valuable consideration supported the valid contract executed by Glenn Martin and the Barbizon School. Valuable consideration need not be *pecuniary* consideration. *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 888 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). Valuable consideration may exist in the form of a right, interest, profit, or benefit to one party or a forbearance, loss, responsibility, or detriment to the other party. *Champlin Petrole-*

*um Co. v. Pruitt*, 539 S.W.2d 356, 361 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.); *Garcia v. Villarreal*, 478 S.W.2d 830, 832 (Tex.Civ. App.—Corpus Christi 1971, no writ); *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551, 555 (Tex.Civ.App.—Tyler 1965, no writ). Therefore, should the Texas Supreme Court subsequently determine that valuable consideration *is* necessary under the DTPA, the Barbizon School would still qualify as a consumer because valuable consideration supported the parties' contract.

item of advertising involved, excluding charges for cuts, engraving or electrotype or as otherwise provided in applicable tariffs. Advertiser further agrees that repayment of charges for omitted and/or erroneous materials shall constitute full repayment and total satisfaction of any liability thereunder.

Glenn Martin claims that since appellee did not pay for any services, this limitation-of-liability clause requires that appellee take nothing in this suit. We disagree.

Section 17.42 of the DTPA states in pertinent part that a consumer's waiver of any DTPA provision is contrary to public policy and is unenforceable and void.[8] To understand the impact of this provision, we must first identify two separate legal actions possible under the circumstances before us. First, appellee could have based its suit on the common-law right of recovery for breach of contract. *See also Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d at 539. Second, as a separate and distinct cause of action, appellee could have filed suit pursuant to its statutory right of recovery under DTPA § 17.50(a). Appellee elected to bring suit under this second alternative. Although a limitation-of-liability clause *may* waive a party's right to recover under the common-law theory of breach of contract, such clause *does not* waive the consumer's alternative right to sue under the DTPA because of the legislative mandate expressed in § 17.42. *Rinehart v. Sonitrol of Dallas,* 620 S.W.2d 660, 663 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.); *see also Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d 612 (Tex.App.—Corpus Christi 1985, no writ) (en banc); *Joseph v. PPG Industries,* 674 S.W.2d at 865.

Glenn Martin alleges that a recent Texas Supreme Court case holds a limitation-of-liability clause in a contract sufficient to defeat recovery under the DTPA. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex. 1982). In the *Robichaux* case, Mr. and Mrs. Robichaux initiated a suit pursuant to the DTPA for breach of express and implied warranties. *See* DTPA § 17.50(a)(2). However, the *Robichaux* opinion appears to have approached the case as if it were a common-law, breach-of-contract suit instead of a DTPA cause of action. It states that parties may not excuse themselves from the obligation to read what they sign and that the language of the contract in question was sufficient to waive all warranties. We agree with these conclusions insofar as they relate to a cause of action based solely upon *contractual* liability. However, the opinion never deals directly with *DTPA* liability and neither mentions nor addresses the impact of DTPA § 17.42 prohibiting waivers of liability. Therefore, despite Glenn Martin's contentions, we do not believe this case to be directly on point.

The legislature obviously intended the DTPA to be a powerful tool in the campaign against deceptive trade practices. The treble damages provision clearly demonstrates this intent. DTPA § 17.50(b)(1). A seller should not be able to avoid § 17.42 by merely including a limitation-of-liability clause in a standard form contract. The DTPA would retain little impact upon deceptive trade practices should sellers of goods and services be allowed to circumvent this provision so easily. *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex.App.—Waco 1985). Therefore, Glenn Martin's limitation-of-liability clause *may* waive appellee's common-law right to sue for breach of contract, or it may limit damages recoverable under the contract. However, we find the clause *does not* prohibit appellee's recovering separately under the DTPA. We find this contract provision unenforceable in this cause of action and overrule Martin's fifth point of error.

## DAMAGES ISSUE

The trial court in its findings of fact stated that appellee suffered actual damages of $30,000 in lost profits. Glenn Mar-

---

8. DTPA § 17.42 provides that certain business consumers with assets of $5,000,000 or more may waive the DTPA protections by written contract, but this exception does not appear relevant to this case.

tin's remaining points of error challenge the sufficiency of the evidence to support this award.

When a trial court files findings of fact and conclusions of law, and a statement of facts is part of the record on appeal, an appellate court will sustain the trial court's findings if there is any evidence of probative value to support them. *Chapa v. Herbster,* 653 S.W.2d 594, 602 (Tex.App.—Tyler 1983, no writ); *see Gulf Freeway Lumber Co. v. Houston Investment Realty Trust,* 452 S.W.2d 39, 43 (Tex. Civ.App.—Houston [14th Dist.] 1970, no writ). An appellate court will *not* sustain the findings if the statement of facts discloses (1) there is no evidence to support them or (2) the evidence is conclusive against them. 4 R. MCDONALD, TEXAS CIVIL PRACTICE § 16.10(b) (rev. 1984); *see Block v. Waters,* 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ).

Appellee offered into evidence its Monthly Advertising Analysis Reports wherein the modeling school maintained statistics on the number of students entering classes each month and the manner in which each student learned of the school (i.e., through television or radio commercials, Yellow Pages ads, high school lectures, etc.). We compiled the following summary from those reports: from June of 1978 through May of 1979, 70 students whose referral source was the Yellow Pages began classes; from June of 1979 through May of 1980, 84 students; from June of 1980 through May of 1981, 22 students (when no ad appeared); and from June of 1981 through May of 1982, at least 55 students (when the ad re-appeared).[9] There is no indication that the number of students learning of the school through means other than the Yellow Pages dropped off significantly from 1980 through 1981 and correspondingly recovered during 1981 through 1982, as was the case for Yellow Pages applicants. Thus, we believe there was *some* evidence that appellee sustained damages from the lack

of a Yellow Pages ad, particularly in light of Glenn Martin's oral testimony that the Yellow Pages was and is an extremely effective means of advertising a business.

Appellee also produced evidence of lost profits in the form of oral testimony by Lou Poliquin and financial summary exhibits prepared by his accountant for 1977 through part of 1982. Lost profits are recoverable even though they may not be calculated with precision. *White v. Southwestern Bell Telephone Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938). In the case of an established business, pre-existing profits may be used to prove with reasonable certainty lost profits during the year in question. *White* at 262. We have found no authority for the appellant's implication that pre-existing profits must remain stable or must increase through previous years to support an award for lost profits in subsequent years. We believe the evidence adduced at trial supports the trial court's finding of $30,000 in lost profits. Glenn Martin's remaining points of error are therefore overruled.

Because we find no reversible error, we affirm the trial court's judgment.

ELLIS, Justice, concurring.

I concur with the Court in affirming the trial court's judgment. I agree with the court that the transfer of valuable consideration is not a prerequisite to consumer status under the DTPA.

The majority in its opinion sets up a two-pronged test to determine consumer status. They state that a DTPA consumer is one who in good faith *initiates the purchasing process.* They go on to state that an individual initiates the purchasing process when he:

(1) presents himself to the seller as a willing buyer with the subjective *intent* or specific "objective" of purchasing, and

---

**9.** The legibility of two or three monthly reports from 1981 through 1982 was poor. The minimum number of students, however, was 55, although it could have been slightly higher.

(2) possesses at least some credible indicia of the *capacity* to consummate the transaction.

They suggest that if a defendant-seller in a DTPA action challenges the plaintiff-buyer's status as a consumer, the buyer must be prepared to offer proof of (1) a good-faith intention to purchase and (2) the capacity to purchase the goods or services in question. I agree that the plaintiff-buyer in a DTPA action should show a good-faith intention to purchase the goods or services but I do not agree that he must show proof of his capacity to purchase the goods or services. I do not think that this restriction should be placed on the achievement of consumer status because many DTPA violations occur prior to the consumer's knowledge of the cost or his capacity to finance the cost of the goods or services.