ACCEPTED
15-25-00140-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/10/2025 9:12 AM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00140-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/10/2025 9:12:07 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIFTEENTH DISTRICT
## AUSTIN, TEXAS

IN RE POWERED BY PEOPLE AND ROBERT FRANCIS O'ROURKE,
*Relators*

ORIGINAL PROCEEDING FROM THE 348TH JUDICIAL DISTRICT
OF TARRANT COUNTY, TEXAS
TRIAL COURT NO. 348-367652-2025

## REPLY IN SUPPORT OF MOTION FOR EMERGENCY RELIEF

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

On Monday, August 25, 2025, pursuant to Texas Rule of Appellate Procedure 52.10, Relators Powered by the People and Robert Francis O'Rourke filed a Motion for Emergency Relief (the "Motion") to accompany their Petition for Writ of Mandamus (the "Petition" or "Pet."). On September 9, 2025, the State of Texas, real party-in-interest, filed a short response to this Motion, as part of its larger Response to Petition for Writ of Mandamus and Motion for Temporary Relief.

Relators plan to file a separate reply addressing the merits of the Petition for Writ of Mandamus by Tuesday, September 16, 2025, subject to any decision by this Court to either require an earlier reply or to order no reply at all.

*Reply in Support of Motion for Emergency Relief*                    Page 1

Here, Relators respectfully submit this Reply in further support of their Motion for Emergency Relief, including Relators' request that this Court stay the modified Temporary Restraining Order issued on August 15, 2025 (the "TRO") and the second temporary restraining order issued on August 25, 2025 (the "Antisuit TRO"), and continue to stay other proceedings pending this Court's ruling on the Petition.

The State sidesteps the actual standard for granting a stay pending appeal, which is done "to preserve the parties' rights until disposition of the appeal." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (citing with approval TEX. R. APP. P. 29.3's "analogous formulation" to guide standard for considering stay requests). In deciding this Motion—as is the case for any request for injunctive relief—this Court must consider "the injury that will befall either party depending on the court's decision," as well as "the harm that other parties or the public will suffer if relief is granted—as well as any potential injury to non-parties caused by granting or denying relief." *In re State*, 711 S.W.3d at 645. Ultimately, "[t]he equitable balancing of these harms is a required aspect of a court's effort to preserve the parties' rights pending appeal." *Id*.

Here, the balance of equities indisputably favors Relators—indeed, the State does not seriously try to argue otherwise. *See* Resp. at 51-52.

***First***, the allegedly exigent circumstances the State relied upon to justify the original and modified TRO are now decidedly past, but the TRO continues to cause irreparable injury to Relators and to Relators' supporters by chilling protected speech and association rights. The balance of equities clearly favors Relators.

***Second***, the Antisuit TRO restrains Powered by People and its counsel from "prosecuting ***any*** . . . claim, or ***proceeding*** that seeks to restrain or enjoin the State from initiating, filing, or prosecuting the quo warranto claims alleged by the State." MR.0978 (emphasis added). However, the State has forced action in the El Paso proceedings by filing its own interlocutory appeal of an "implicit" denial of a plea to the jurisdiction, which is now pending before this Court, No. 15-25-00141-CV. In doing so, the State has invoked Section 51.014(b) of the Texas Civil Practice & Remedies Code, which stays proceedings in the trial court. So—by the State's own position—the only pending proceeding related to the El Paso case is one which it itself initiated. On its face, the Antisuit TRO could be read to prevent Powered by People from responding to this appeal, which would be an absurd result and raise severe due process concerns.

***Finally***, while Relators plan to submit a separate reply in support of the merits of the Petition, "a preliminary inquiry into the likely merits of the parties' legal positions" favors Relators. *In re State*, 711 S.W.3d at 645. Fundamentally, and as summarized below, the State cannot demonstrate that any act or practice complained

of is unlawful under the Texas Deceptive Trade Practices Act ("DTPA"); therefore, the Respondent lacks jurisdiction and proper venue to pursue this case.

## RELEVANT PROCEDURAL & FACTUAL BACKGROUND

This case concerns the weaponization of the Texas Attorney General's civil enforcement powers to silence political opposition and retaliate against protected speech and political activities, against the backdrop of a contentious public debate about Texas' mid-decade redistricting efforts. *See generally* Pet. at 7-13. Indeed, the Attorney General's response to this Court's administrative stay—a routine case management tool meant to "freeze legal proceedings until the court can rule on a party's request for expedited relief," *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (internal quotation marks and citation omitted)—illustrates the hyperbole and vitriol General Paxton has consistently employed in pursuing this case against Relators. Specifically, General Paxton posted on social media that:[1]

---

[1] Ken Paxton (@KenPaxton), "What we are witnessing in Texas…", X (Aug. 27, 2025, 2:59 PM) https://x.com/KenPaxtonTX/status/1960794232710684922



**Post**

**Attorney General Ken Paxton** ✔ X.com
@KenPaxtonTX

What we are witnessing in Texas right now is a constitutional crisis being orchestrated by activist judges on the Beto-loving Fifteenth Court of Appeals.

Beto said, "f*** the rules," and these unelected justices—Scott Brister, Scott Field, and April Farris—are helping him do just that with his unlawful bribery scheme.

What's worse is that the Texas Supreme Court just made a ruling refusing to stop the appeals court's insane decision to help Beto.

We must stop Beto from buying off our politicians and the judicial activism allowing it to happen.

1:59 PM · 8/27/25 · **27K** Views

💬 108   🔁 580   ♡ 1.8K   🔖 32   ⬆

Meanwhile, the crux of the State's claimed injury to Texans—that "Robert Francis O'Rourke and his political influence operation, Powered by People, are traveling the state misleadingly raising political funds to pay for the personal expenses of Texas Democrats who have abandoned their offices and fled the state in the middle of a Special Legislative Session"[2]—has ceased to be a live concern. Democrats returned to Austin on Monday, August 18, 2025, and the new

---

[2] This is the first sentence of the State's operative Petition. MR.0198.

redistricting maps were passed by the Texas House of Representatives on August 20, 2025 and signed into law by Governor Abbott on August 29, 2025.[3]

But acute and irreparable harm continues each day for Relators. Given the vague, broad language of the TRO, the State's changing position about the reach of that injunction, and the Attorney General's repeated, targeted attacks against Mr. O'Rourke, Relators are forced to consult with legal counsel prior to public events and fundraising solicitations, including for topics far afield of the quorum-break (which, of course, has long concluded). Relators' in-state assets remain frozen. And, as noted above, Powered by People questions its ability to prosecute the El Paso proceeding in the pending appeal before this Court due to the Antisuit TRO which— at this juncture—seemingly serves no other purpose.

On top of that, recent donations from like-minded Texans made to Powered by People on the ActBlue platform remain in limbo as ActBlue will not transmit that money to Relators for fear of violating the TRO, overtly preventing the free association of Relators and their likeminded donors. SR.0049-0050 (hearing transcript from Relators' August 19, 2025 motion to dissolve the TRO, where Relators' counsel explains that "since Friday's modification, ActBlue is not sending

---

[3] *See, e.g.*, J. David Goodman, *Abbott Signs Gerrymandered Map as Texas G.O.P. Moves Further Right*, The New York Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/politics/abbott-texas-legislature-redistricting-map.html

any money to Powered By People from Texas donors because the donors' money leaves the state to go to ActBlue's account outside of Texas") & SR.0055 (counsel further explaining that "men and women of reasonable intelligence, including attorneys for ActBlue, have determined that this TRO requires ActBlue to cut off entire streams of funds from Texas donors because the Texas donation leaves Texas and goes to ActBlue's bank account, regardless of the reasons that the funds were raised").

**ARGUMENT**

This Court is fully justified in granting emergency relief to stay the Trial Court proceedings because the Respondent issued an overbroad TRO infringing bedrock constitutional rights of free speech and association and did so without subject matter jurisdiction. Mandamus is the appropriate avenue to challenge this type of manifest abuse because failure to stop the error and cease the constitutional violation creates both irreparable harm and renders any appellate remedies inadequate as a matter of course.

Texas law is clear that mandamus is appropriate to challenge overbroad and unconstitutional prior restraints of speech, TRO's, and a court's lack of subject matter jurisdiction. Mandamus is appropriate when a TRO is improvidently granted, permitting a party to seek immediate relief. *In re Cnty. of Hidalgo*, 655 S.W.3d 44, 55 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.) ("Mandamus review of a

trial court's temporary restraining order is proper because such an order cannot be appealed; thus, the party against whom such injunctive relief is granted lacks an adequate remedy by appeal"); *In re Abbott*, 601 S.W.3d 802, 813 (Tex. 2020) (orig. proceeding) (per curiam); *In re Office of Att'y Gen.*, 257 S.W.3d 695, 698 (Tex. 2008) (orig. proceeding) (per curiam); *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 207 (Tex. 2002) (orig. proceeding).

Mandamus is also appropriate when a court exercises jurisdiction when no subject matter jurisdiction exists. *See In re Accident Fund Gen. Ins. Co.*, 543 S.W.3d 750, 755 (Tex. 2017) (conditionally granting writ of mandamus to require dismissal for lack of subject matter jurisdiction). Mandamus issues to "correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Here, there is a clear abuse of discretion, with patent  constitutional violations that are ongoing. Because the Court should both immediately remedy those violations and preclude the Respondent from exercising jurisdiction over a matter it does not have power to entertain, mandamus is appropriate and the request for emergency relief should be granted.[4]

---

[4] The State relies on *Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 354 (Tex. 2024), to misconstrue Relators' argument as one solely about whether the Attorney General has the "right to bring such a cause of action." Resp. at 15. This is not simply a merits decision based on the applicability of the statute; rather, it is fundamentally a question of constitutional standing jurisprudence. Can the plaintiff show a

## A. The TRO Imposes Irreparable Injuries on Relators, but the State's Purported Need for the TRO has Long Passed.

To be clear, the State has offered *no* evidence of actual wrongdoing justifying the TRO in the first place, but even assuming it made a modest showing of harm to justify the original TRO, the State's primary purpose of bringing suit in Tarrant County was to enjoin political fundraising and disrupt a political rally that occurred *nearly a month ago*. *See generally* MR.0001-0013 (Original Pet.) & MR.0009 ("Defendants are preparing to engage in the same unlawful and deceptive fundraising practices described above during the Fort Worth rally" on August 9, 2025). The fundamental factual basis for the State's argument—that Texas legislators were out of state, preventing the legislature from proceeding with a quorum and that Relators were somehow improperly facilitating the quorum break— is no longer at issue at all. And yet, and as the Attorney General's office boasted just

---

concrete, particularized injury fairly traceable to the conduct of the defendant? *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) (Texas constitutional standing follows Article III courts' standing jurisprudence generally). Here, the alleged "injury" suffered is defined entirely and exclusively by the DTPA as a consumer injury (with discrete and specific meanings) and the AG is only authorized to bring actions within the scope of that limited grant of authority. If the injury alleged is entirely outside the scope of the DTPA and the AG's authority to sue, then the State has no injury it can trace to a plaintiff (no constitutional standing to even sue) and also has no legal basis upon which it is authorized to act (no statutory cause of action). This is not simply a merits decision that a trial court must determine after a trial; rather, the Court must assess whether the injuries alleged in this case are the type of injuries that are even cognizable and traceable to the Relators and whether the State has the statutory authority to bring such a suit. That is the essence of a standing inquiry depriving any court of subject matter jurisdiction.

last week, after this Court clarified the scope of the administrative stay, the TRO continues to "prevent[] O'Rourke and Powered by People—and any of its institutional partners, such as ActBlue—from removing any property or funds out of Texas."[5] Notably, the State *never even sought this form of relief* against Mr. O'Rourke in either its original or amended petition. *Cf. RP&R, Inc. v. Territo*, 32 S.W.3d 396, 402 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[W]here the injunctive relief granted exceeds the relief requested by the applicant in the petition, the trial court exceeds its jurisdiction.") (citing *Fairfield v. Stonehenge Ass'n Co.*, 678 S.W.2d 608, 611 (Tex. App.—Houston [14th Dist.] 1984, no writ)).

Now, the State cannot produce *any* credible rationale to support the continuing need for the TRO, much less meet the strict requirements necessary to justify prior restraints of speech. Meanwhile, Relators continue to suffer irreparable injury. It is black letter law that "any delay in the exercise of First Amendment rights constitutes an irreparable injury to those seeking such exercise." *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981) (quoting *Southwestern Newspapers Corp. v. Curtis*, 584 S.W.2d 362, 365 (Tex. Civ. App. Amarillo 1979, no writ)). *Accord Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Opulent Life Church v. City of*

---

[5] *Attorney General Ken Paxton Secures Extended TROs Against Beto O'Rourke, Preventing Additional Financial Payoffs to Texas Politicians*, Tex. Att'y Gen., News Release (Sept. 4, 2025), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-secures-extended-tros-against-beto-orourke-preventing-additional.

*Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). For this reason, prior restraints of speech, including "judicial orders forbidding certain communications that are issued in advance of the time that such communications are to occur," are "heavily disfavored" and presumptively unconstitutional. *Kinney v. Barnes*, 443 S.W.3d 87, 90 (Tex. 2014). Thus, when language "evoked no threat of danger to anyone," even when it was allegedly defamatory and unlawful, the Texas Supreme Court has found that such language "may not be subject to the prior restraint of a temporary injunction." *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983). Indeed, the Texas Supreme Court has explained that "[s]o great is our reticence to condone prior restraints that we refuse to allow even unprotected speech to be banned if restraining such speech would also chill a substantial amount of protected speech." *Kinney,* 443 S.W.3d at 89. Accordingly, prior restraints of speech "may be permissible only when essential to the avoidance of an impending danger, and only when it is the least restrictive means of preventing that harm" *Id*. at 95 (quoting in part *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex. 1992); cleaned up).

At this point, there is no plausible argument that the TRO is "essential" to avoid any "impending danger," much less that it is the least restrictive way to do so. The TRO explicitly targets Relators' core political speech and association, as it aims at the solicitations of funds, the utilization of political fundraising as a means of association, and—as evidenced by the State's attempted enforcement efforts—

Relators' statements on matters of public concern. Relators have argued at length that this constitutes an unlawful prior restraint on speech. *See* Pet. at 42-53; s*ee generally* MR.0249-0275 (Mot. to Dissolve).

The TRO, in prohibiting "[r]aising funds for non-political purposes," MR.0392, is also unconstitutionally vague. Because it does not provide clear guidance on what conduct is allowed or prohibited, Relators must consult counsel prior to speaking and fundraising. *Cf. Citizens United v. FEC*, 558 U.S. 310, 324 (2010) ("The First Amendment does not permit laws that force speakers to retain a campaign finance attorney, conduct demographic marketing research, or seek declaratory rulings before discussing the most salient political issues of our day."); *see also* Pet. at 54-56.

Moreover, the TRO is grossly overbroad. As a result, it has severely disrupted Relators' ability to raise and distribute political and charitable funds *of any kind*, far past any specific contributions and expenditures implicated by the State's DTPA claim. Today, Relators' Texas-based assets remain frozen in full, preventing Relators from utilizing in-state resources. *See* MR.0393 (restraining "any filing entity or foreign filing entity in active concert or participation with Defendant Powered by People and/or Defendant O'Rourke (including banks, financial institutions, and ActBlue" from "removing any property or funds that belong to" Relators from Texas). This exceeds what is necessary to prevent any conceivable

violation of the DTPA. *Avila v. State*, 252 S.W.3d 632, 648 (Tex. App.—Tyler 2008, no pet.) (deleting portion of injunction under DTPA when it restrained defendants from transferring funds; reasoning that, because some of that "money has been earned through legitimate business activities," injunction was overly broad).

Moreover, ActBlue has interpreted this provision to prevent it from transferring donations from Texas-based donors to Powered by People, on the theory that such donations are funds "that belong to" Relators in Texas by virtue of the donor's residence. SR.0049-0051 & SR.0055. This means that Texas-based donors who have exercised their right to give political donations and pool resources with Powered by People based on shared political beliefs are being actively prevented from doing so because of the TRO. The injunction reaches far past the quorum-break: For instance, the contributions of Texas donors who decided long ago to give recurring monthly donations to Powered by People are currently blocked. As a result, of course, Relators are wholly prevented from accessing and spending this same money to effectuate their mission, far past any nexus with the allegations of the lawsuit.

Such broad censorship is not permitted by the Texas or U.S. Constitution. *See, e.g., Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734–35 (2011) ("[W]e have invalidated government-imposed restrictions on campaign expenditures, restraints on independent expenditures applied to express advocacy

groups . . . and regulations barring unions, nonprofit and other associations, and corporations from making independent expenditures for electioneering communication." (citations omitted; cleaned up)). The balance of equities thus favors granting the Motion.

**B. The Antisuit TRO Serves No Clear State Purpose but Poses Grave Due Process Concerns, Providing Another Equitable Reason to Grant the Motion.**

The State has only ever identified one possible State harm justifying the extraordinary remedy of the Antisuit TRO: "hemorrhaging taxpayer dollars on duplicative litigation." MR.0459; *see generally* MR.0458-0824. Ironically enough, the State's alleged harm is most directly addressed by granting *this* Motion, and staying further proceedings pending this appeal. Again, the El Paso trial court proceeding is currently stayed due to the State's appeal so the only pending proceeding related to the El Paso case is now before this Court. On its face, the Antisuit TRO could be read to prevent Relator Powered by People from responding to the State's appeal, which would be an absurd result and raise severe due process concerns. *See City of Houston v. Kunze*, 258 S.W.2d 226, 228 (Tex. Civ. App.—Fort Worth 1953), *aff'd*, 153 Tex. 42, 262 S.W.2d 947 (1953) ("An injunction against the prosecution of any suit is at best a harsh remedy and should never be resorted to in a doubtful case, nor to avoid the possibility of conflicting decisions, nor yet to discourage litigation."). And for reasons more fully explained in Relators' Petition,

Pet. at 70-74, and trial court brief, MR.0862-0869, the Antisuit TRO was improper in the first place. Accordingly, equitable considerations also heavily favor a stay of the Antisuit TRO.

**C. Relators are Likely to Prevail on the Merits of their Claims.**

As summarized below,[6] the TRO is fundamentally invalid because the Attorney General asserts a claim that is not cognizable under the DTPA and is, in fact, at odds with its plain language. He thus has no standing to prosecute this case, nor did the trial court have jurisdiction to grant the TRO.

The DTPA only protects against "[f]alse, misleading, or deceptive acts" that are made "*in the conduct of any trade or commerce*." TEX. BUS. & COM. CODE § 17.46(a) (emphasis added). At its core, the DTPA "is designed to protect consumers from any deceptive trade practices made in connection with the purchase or lease of any goods or services." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex. 1981)). Texas courts "are bound to construe the[] terms [of the DTPA] in accordance with their statutory definitions." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 274 (Tex. 1995) (overturning jury charge substituting "ordinary person" for "consumer" and omitting the terms "goods and services"). The State has failed to provide any

---

[6] Again, Relators would like the opportunity to file a more complete reply in support of their Petition, and plan to file their reply by September 16, 2025 (seven days from the State's response deadline) unless instructed otherwise by this Court.

basis to even argue that the acts it challenges qualify as being conducted in trade or commerce.

In order to determine whether a challenged practice is actionable under the DTPA, courts look at a purported consumer's "relationship to the transaction." *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 407 (Tex. App.—Houston [14th dist.] 1997, writ dism'd). The only purportedly deceptive transactions being challenged are Relators' solicitations of "political donations." MR.0202. Setting aside its veracity, the State's petition rests entirely on a single premise: that Relators raised "political donations" but then used the money for "non-political purposes." MR.0198. The transactions with the purported "Texas consumers" are the donations and solicitations of the donations. MR.0201.

But political donations are, by definition, not conduct in "trade and commerce," because the core characteristic of a trade or a commercial transaction is that there is at least the prospect of a "transfer [of] valuable consideration." *Martin v. Lou Poliquin Enters., Inc.*, 696 S.W.2d 180, 184 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The transfer need not be fully consummated, *id.*, but the plain language of the DTPA requires, at a minimum, an "advertising, offering for sale, sale, lease, or distribution" of some "thing of value." Tex. Bus. & Com. Code § 17.45(6). This prospect of exchanging valuable things, is a key element that distinguishes a gift, or donation, from a transaction in "trade and commerce." *Accord*

Commerce, Black's Law Dictionary (12th ed. 2024) (defining commerce as "[t]he exchange of goods and services."); *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 448 (Tex. App.—Fort Worth 2023, pet. denied) ("A commercial transaction is generally a business deal.") (internal quotation marks and citation omitted)).

In contrast to trades or commercial transactions, the "sine qua non" of a donation is "a transfer of money or property without adequate consideration." *Hernandez v. Commissioner*, 490 U.S. 680, 691 (1989); *see also Pankhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 730 (Tex. App.—Corpus Christi 1993, writ denied) ("A gift is a transfer of property made voluntarily and gratuitously. . . . Lack of consideration is an essential characteristic of a gift such that an exchange of consideration precludes a gift.") (citing *Hilley v. Hilley*, 342 S.W.2d 565, 568 (Tex. 1961)). Thus, in determining whether a transfer of money was a donation, courts look for whether the purported donor received "an identifiable benefit" in exchange, *Hernandez*, 490 U.S. at 691, or, in other words, a "measurable, specific return [that] comes to the payor as a quid pro quo for the donation." *Id.* at 688; *New Jersey v. Bessent*, Nos. 24-1499-cv, 24-1503-cv, 2025 U.S. App. LEXIS 20554, at *29 (2d Cir. Aug. 13 2025) (same).

The State has failed to articulate what valuable, good, service, or other "thing" Relators advertised or offered to sell to the donors. Nor can the State do so because

on the face of its petition it only alleges that Relators made solicitations for gratuitous donations: "Every dollar you *give* will go towards stopping this power grab"; "100% of your *donation* will go to supporting Texas Democrats"; "Your *contribution* will benefit Powered by People." MR.0203. Because the donations were gratuitous without any prospect of an exchange of value, they were not made in "trade or commerce."

For this reason, when considering an attempted DTPA action by the Attorney General against a church, the Western District of Texas wrote: "Solicitation of funds from church members, and new members, is not a business practice. . . . The DTPA was meant to protect those residents from deceptive 'business' acts and practices only." *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 787 F. Supp. 689, 697 (W.D. Tex. 1992) (citing *Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943) (rejecting a reading of an ordinance under which "the passing of the collection plate in church would make the church service a commercial project.")), *vacated on other grounds*, 986 F.2d 962. Although the trial court decision in *Word of Faith* was vacated on abstention grounds, the Fifth Circuit wrote, "It is highly likely, as the district court noted, that the DTPA does not even apply to the church." *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 968 (5th Cir. 1993).

The Legislature has seen fit to create entire statutory schemes regulating, *inter alia*, "political funds and campaigns," TEX. ELEC. CODE Title 15, "the collection or solicitation by for-profit entities of certain public donations," Tex. Bus. & Com. Code Title 2, Ch. 17, Subchapter K, "solicitation for public safety organizations," TEX. OCC. CODE Ch. 1803, and "telephone solicitation for certain law-enforcement related charitable organizations," TEX. BUS. & COM. CODE Ch. 303. And indeed, it has had to alter some of those schemes when they impermissibly infringe on the First Amendment by failing to recognize that "charitable . . . solicitation is protected under the First Amendment to a greater extent than commercial speech." *Texas State Troopers Ass'n, Inc. v. Morales*, 10 F. Supp. 2d 628, 632 (N.D. Tex. 1998) (holding that portions of the Texas Law Enforcement Telephone Solicitation Act violated First Amendment). The Attorney General may be dissatisfied that the direct tools the Legislature provided to regulate political donations and expenditures require the participation of the Texas Ethics Commission or a district attorney—which, of course, would undermine his goal of using this baseless litigation to promote his Senatorial campaign—but his displeasure with the Legislature does not permit him to turn an inapposite *consumer* protection statute into a weapon against his political opponent for engaging in noncommercial political speech.

Indeed, Relators' more limited interpretation of the DTPA *must* be correct—otherwise, the DTPA would be a potentially boundless legal weapon that raises

inherent constitutional problems. Particularly in light of the DTPA's relaxed standards for obtaining emergency injunctive relief, TEX. BUS. & COM. CODE § 17.47, the Attorney General's interpretation would grant plenary authority to the State to bring an *ex parte* DTPA action without prior notice, in virtually any Texas jurisdiction, against anyone engaged in political or charitable fundraising, and use that action to immediately freeze their assets, threaten hundreds of thousands of dollars of fines and (as the State has done here) potentially seek arrest. This puts churches, charities, and political groups and actors of all stripes in danger of state overreach whenever they engage in fundraising practices the State does not like, and guarantees the chilling of protected association. *Cf. Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) ("Protected association furthers a wide variety of political, social, economic, educational, religious, and cultural ends, and is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. Government infringement of this freedom can take a number of forms . . . [including] where individuals are punished for their political affiliation." (citations omitted; cleaned up)). Because there is no legal or factual basis to support the underlying lawsuit, Relators are likely to succeed on their jurisdictional challenge.

## CONCLUSION

For these reasons and those articulated in Relators' Motion for Emergency Relief, Relators respectfully request that this court grant temporary relief by issuing an order staying the TRO, Antisuit TRO, and all underlying proceedings until such time as the Court has ruled on Relators' Petition for Writ of Mandamus and for any other relief to which they may be entitled.

Respectfully submitted,

*/s/ Mimi Marziani*
**Mimi Marziani**
Texas Bar No. 24091906
**Joaquin Gonzalez**
Texas Bar No. 24109935
**Rebecca (Beth) Stevens**
Texas Bar No. 24065381
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Phone: 210-343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com
bstevens@msgpllc.com

-and-

**Sean J. McCaffity**
State Bar No. 24013122
**SOMMERMAN McCAFFITY, QUESADA & GEISLER L.L.P.**
3811 Turtle Creek Blvd, Ste 1400
Dallas, Texas 75219-4461
Phone: 214-720-0720
smccaffity@textrial.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 52.10(a), I certify that the undersigned has made a diligent effort to notify all parties of the requested temporary relief sought in this motion and that a true copy of the foregoing has this day been sent via Federal Express Overnight Delivery and e-mail to the Respondent, by and through their counsel of record, and to the real party in interest and other parties in the underlying lawsuit at the addresses below:

Hon. Megan Fahey
348th Judicial District Court
Tarrant County Courthouse
100 North Calhoun St., 3rd Floor
Fort Worth, TX 76196
Phone: 817-884-2715
ndbentley@tarrantcountytx.gov
LAAdams@tarrantcountytx.gov

Ken Paxton
Attorney General of Texas
Rob Farquharson
Dep. Chief, Consumer Protection Division
Johnathan Stone
Chief, Consumer Protection Division
Office of the Attorney General of Texas
Consumer Protection Division
300 W. 15th St.
Austin, Texas 78701
Phone: (214) 290-8811
Fax: (214) 969-7615
Rob.Farquharson@oag.texas.gov

/s/ Sean J. McCaffity
Sean J. McCaffity

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Joaquin Gonzalez on behalf of Joaquin Gonzalez
Bar No. 24109935
jgonzalez@msgpllc.com
Envelope ID: 105424859
Filing Code Description: Response
Filing Description: Reply in Support of Motion for Emergency Relief
Status as of 9/10/2025 9:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sean McCaffity | 24013122 | smccaffity@textrial.com | 9/10/2025 9:12:07 AM | SENT |
| Robert Farquharson | 24100550 | rob.farquharson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Mimi Marziani | | mmarziani@msgpllc.com | 9/10/2025 9:12:07 AM | SENT |
| Joaquin Gonzalez | | jgonzalez@msgpllc.com | 9/10/2025 9:12:07 AM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Rebecca Stevens | | bstevens@msgpllc.com | 9/10/2025 9:12:07 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Brian Falligant` | | bfalligant@inquestresources.com | 9/10/2025 9:12:07 AM | SENT |
| William Peterson | | william.peterson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Rebecca Neumann | | rneumann@textrial.com | 9/10/2025 9:12:07 AM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Cole | 24124187 | William.Cole@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| William Peterson | | William.Peterson@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 9/10/2025 9:12:07 AM | SENT |